IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY SWEETING, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-0368 Erie |
| | ) | |
| v. | ) | Honorable Sean J. McLaughlin |
| | ) | |
| HIGHMARK, INC., | ) | |
| | ) | Electronically filed. |
| Defendant. | ) | |

PLAINTIFF'S PRETRIAL NARRATIVE STATEMENT

COMES NOW, the Plaintiff, JOY SWEETING, by and through her attorneys, SCANLON & SANSONE, and JOEL S. SANONE, ESQUIRE, and hereby files the within Pretrial Narrative Statement, averring as follows:

I. FACTS

Plaintiff was employed by the Defendant since on or about October 17, 1994, most recently as the Healthplace Administrator at Defendant's Erie facility.

Plaintiff was informed of her termination on or about March 15, 2004, by Cindy Mori of Human Relations, as well as her supervisor, Tina Palaggo-Toy. However, Plaintiff was not given a clear reason as to why she was selected for termination. Plaintiff was allegedly terminated because there were no positions open for her after the closure of her department and the resulting reorganization.

On March 16, 2004, Plaintiff was informed that she could remain on as an employee until October 17, 2004 to complete her tenth year of employment. However, she was directed not to do anything relating to any job duties during this time.

Plaintiff is more qualified and experienced than younger employees and male employees who were treated more favorably than she and who retained their employment as a result of the aforementioned reorganization.

Plaintiff's program assistant, Rebecca Swick, who is over 30 years younger than Plaintiff, was not terminated. In fact, Ms. Swick was promoted two levels above Plaintiff's level, and given a salary greater than that which Plaintiff had been earning. Plaintiff was more qualified for this position than Ms. Swick, but was not offered the job.

In addition, at the time that Plaintiff was informed of her termination, she was working over 20 accounts as a wellness consultant. These accounts were turned over to a younger, less experienced, male employee who lives and works outside of the Pittsburgh area.

The ultimate reasons offered by the Defendant for its termination of the Plaintiff are obviously pretextual. The decision maker, Anna Silberman, has given testimony during her deposition which is contradictory and which is also contradicted by other witnesses in evidence in the record. The proof of pretext at trial in this case will comprise a significant portion of the Plaintiff's case-in-chief. In any case, the issue for the jury will be whether or not the reason (or reasons) offered by Ms. Silberman for the termination of the Plaintiff are pretextual in nature.

At trial, the Plaintiff will introduce evidence of the economic losses suffered by the Plaintiff as a result of her unlawful termination. The calculation for the jury will be based upon Plaintiff's yearly salary earned at the time of her termination in the amount of $49,441.00, with accumulated cost of living raises for 2004, 2005 and 2006. Plaintiff will also introduce evidence regarding the fringe benefits that she received as an employee of the Defendant. These benefits include but are not limited to 401(k) plan to which Defendant contributed, health, dental and

vision insurance and life insurance. Plaintiff will also introduce evidence of her current earnings and she will testify at trial of her numerous efforts to obtain employment since her termination.

In addition to the damages described above, Plaintiff expects to introduce evidence to the jury to show that she is entitled to liquidated damages, as a direct result of the intentional act by the Defendant to terminate Plaintiff because of her age, and certainly not because of her performance.

Plaintiff will also present evidence that she has suffered severe emotional distress, inconvenience, humiliation, embarrassment, loss of job status and standing among her peers. As such, Plaintiff will introduce evidence that she is entitled to compensatory damages and punitive damages under the ADEA, Title VII of the Civil Rights Act (as amended) and the PHRA and to the extent permitted by law as a result of the Defendant's actions in this case.

Lastly, should the Plaintiff obtain a successful verdict, she will submit an attorney's fee and cost petition to the Court for its consideration.

## II. WITNESSES

*Liability Witnesses*

1. Plaintiff, Joy Sweeting
   c/o Scanlon & Sansone

2. Rebecca Swick, as for cross examination
   c/o Defendant

3. Cynthia Mori, as for cross examination
   c/o Defendant

4. Tina Palaggo-Toy, as for cross examination
   c/o Defendant

5. Anna Silberman, as for cross examination
   c/o Defendant

6.     Aaron Walton, as for cross examination
c/o Defendant

7.     Dr. Bradley Pifalo, as for cross examination
c/o Defendant

8.     Deborah Rice, as for cross examination
c/o Defendant

9.     All witnesses listed on Defendant's Pretrial Narrative Statement.

*Damage Witnesses*

1.     Plaintiff, Joy Sweeting

## III. EXHIBITS

1. Plaintiff's EEOC file, per FOIA request.

2. Plaintiff's salary, wage and financial documents.  PL 001-0015

3. List of positions applied for since 3-15-15.  PL 016

4. Resume of Joy Sweeting.  PL 017

5. Memo from Plaintiff to Patrick McCauley dated March 2004.  PL 018-109

6. Memo from Plaintiff to Tina dated March 12, 2004.  PL 020

7. Handwritten notes.  PL 021

8. Job Postings Summary for Community Site Consultant.  PL 022

9. Correspondence from Aaron C. Phillips to Palaggo-Toy dated October 16, 2002.  PL 023

10. Performance Management Planning and Appraisal Worksheet for Joy Sweeting dated October 17, 1995.  PL 024-026

11. Performance Improvement Plan dated September and September/December 1995. PL 027-029, 057-059

12. Health Education Center 1996 Plan Outline.  PL 030-032

13. Performance Planning & Appraisal Form dated June 2001.  PL 033-040

14. Performance Management Planning & Appraisal Worksheet dated June 1999. PL 041-046

15. Performance Management Planning & Appraisal Worksheet dated December 1997. PL 047-050

16. Memo from Palaggo-Toy dated June 4, 1998.  PL 051

17. Tina Palaggo-Toy 1998 Objectives.  PL 052

18. Performance Management Planning and Appraisal Worksheet dated December 1996. PL 053-056

19. New Opportunities Posting for Health Place Admin. dated September 16, 1994. PL 60

20. Job Description for Community Site Consultant.  PL 061-064

21. Job Description for Worksite Consultant.  PL 086-089

22. Joy Sweeting Outline for Performance Evaluation dated May 24, 2002.  PL 104-106

23. Performance Improvement Plan dated June 24, 1999.  PL 107

24. Performance Planning & Appraisal Form dated June 2, 2002. PL 108-116

25. Performance Planning & Appraisal Form dated June 2, 2002. PL 117-123

26. List of Names from Highmark Employee Director as of May 11, 2004.  PL 124

27. Typewritten notes dated March 15, 2004.  PL 125

28. Employee Directory internet page.  PL 126

29. Corner Talk dated November/December 2002.  PL 127-134

30. Plaintiff's Weekly Planner for 2003 and 2004.  PL 135-360

31. Personnel file of Joy Sweeting.  D1-75

32. File of Tina Palaggo-Toy.  D 76-343

33. Cynthia Mori's File, re: Reorganization.  D 344-430a

34. Defendant's EEOC File.  D 431-507

35. EEOC documents, re: Defendant's FOIA request.  D 508-596

36. Personnel file of Janet Banaszak.  D 597-671  Confidential

37. Personnel file of Lee Ann Gardner.  D 672-749  Confidential

38. Personnel file of Gerald DeNucci.  D750-799 Confidential

39. Personnel file of Lisa Holden.  D 800-864 Confidential

40. Personnel file of Marlene Janco.  D 865-900 Confidential

41. Personnel file of Patrick McCauley.  D 901-976 Confidential

42. Personnel file of Richard Saar.  D 977-1114 Confidential

43. Personnel file of Rebecca Swick. D 1115-1202  Confidential

44. Personnel file of Vickers. Ward.  D 1203-1244 Confidential

45. Personnel file of Mark Winters.  D 1245-1295  Confidential

46. Employee Guidebook.  D 1296-1357

47. List of employees.  D 1358-1358a

48. Documents regarding Employee Benefits.  D 1386-1678

49. Highmark Policy on Displacement and Reassignment of Personnel.  D 1679-1682

50. Highmark Policy on Disciplinary Process, Suspensions and Terminations. D1683-1687

51. Job Description, re: Health Place Administrator.  D 1362-1363

52. Job Description, re: Erie-BCWP HealthPLACE of Erie.  D 1359-1361

53. Job Description, re: Worksite Consultant.  D 1372-1376

54. Job Description, re: Hospital Site Consultant. D 1382-1385

55. Undated letter to Joy from Swick.

56. District 4 Client List, with handwritten notes. 3 pp.

57. All exhibits attached to all depositions taken in this case.

58. All exhibits listed by the Defendants in their Pretrial Narrative Statement.

## IV. USE OF DEPOSITIONS

Plaintiff does not anticipate using complete deposition transcripts except for the purposes of impeachment.

## V. TRIAL TIME

Plaintiff estimates that the Plaintiff's case-in-chief will be approximately three to four days in length.

## VI. CONCLUSION

Should additional facts come to the attention of the Plaintiff which warrant an amendment of Plaintiff's narrative, list of witnesses and/or list of exhibits, Plaintiff will move this Court for permission to supplement this pleading.

                Respectfully submitted,

                SCANLON & SANSONE

                s/Joel S. Sansone
                Joel S. Sansone, Esquire
                Attorney for Plaintiff

Dated: December 20, 2005