IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY SWEETING | ) | CIVIL ACTION NO. 04-0368 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HIGHMARK, INC., | ) | Honorable Sean McLaughlin |
| | ) | |
| Defendant. | ) | Electronically Filed. |

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, JOY SWEETING, by and through her attorneys, SCANLON & SANSONE, and JOEL S. SANSONE, ESQUIRE, and hereby files her Brief in Opposition to Defendant's Motion for Summary Judgment as follows:

I. INTRODUCTION

The bringing of this motion by the Defendant is nothing more than an abuse of Rule 56. Virtually all of the important facts are in dispute, except those facts which favor the Plaintiff. Perhaps the only real good which can come from this pointless motion is that the Defendant may be forced to focus on the actual facts of this case, which illustrate the illegality of Defendant's action in firing the Plaintiff at 66 years of age. That can only happen, however, if the Defendant reads the Plaintiff's fact offering, since the Defendant's factual offering inexplicably omits most of the critical facts of the case. When the Court reviews all of the facts, Plaintiff respectfully suggests that the Court will conclude that the Defendant's motion is ludicrous.

## II. FACTS

Plaintiff incorporates here by reference all of the facts set forth in Plaintiff's Counterstatement of Material Facts filed contemporaneously herewith. The Argument and assertions contained herein are wholly dependent upon the factual recitation set forth in Plaintiff's Counterstatement of Facts. Therefore, all facts contained therein are adopted by reference as though fully set forth at length herein.

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only where "the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." F.R.C.P. 56(c). It is well established that upon consideration of a Motion for Summary Judgment the Court may only grant summary judgment when, after reviewing the record evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact. *See, e.g. Turner v. Schering-Plough Corp.,* 901 F.2d 335, 340 (3rd Cir., 1990). In determining if a dispute of fact is "genuine," "the evidence must be such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court may not resolve disputed factual issues, but should determine if there are material factual issues which require action by a jury. *Id.* at 247-248. Only when the record, taken as a whole, shows that there is no possibility that a rational trier of fact could find in favor of the nonmoving party should a court grant a motion for summary judgment. *Matsushita Elec. Indus. Co., LTD v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Courts have held that "summary judgment may be inappropriate when a case implicates

questions of 'state of mind' or 'intent.'" *Williams McCoy v. Starz Encore Group,* 2004 WL 356198 (E.D.Pa. Feb. 5, 2004).

The Court must provide Plaintiff with the benefit of all reasonable inferences, but must **make no credibility determinations or weighing any evidence**. (Emphasis added) *Sempier v. Johnson and Higgins*, 45 F.3d 724, 727 (3d Cir. 1995), cert denied, 132 L.Ed. 2d. 854 at 727; *see, e.g., Lytle v. Household Mfg., Inc.,* 494 U. S. 545, 554-555 (1990). This requirement that the Court refrain from weighing credibility and evidence "is applied with added rigor in employment discrimination cases, where <u>intent and credibility are crucial issues</u>." *Stewart v. Rutgers*, 120 F.3d 426, 430-431 (3rd Cir. 1997), *Walden v. Saint Gobain Corp.,* 323 F.Supp.2d 637, 641 (E.D.Pa. 2004)(emphasis added).

> The issue of the *intent* at the time of the (discriminatory action) is clearly a *factual question*. Thus, by pointing to evidence which calls into question the Defendant's intent, the Plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment. (Emphasis added)

*Chippolini v. Spencer Gifts, Inc.,* 814 F.2d 893, 899 (3rd Cir. 1987).

A Plaintiff can survive summary judgment by providing circumstantial evidence from which a fact finder could infer pretext. *Armbruster v. Unisys Corp*. 32 F.3d 768, 782-783 (3d Cir. 1994). In order to satisfy Plaintiff's burden at summary judgment stage when presenting circumstantial evidence of discrimination, the Plaintiff must meet the standards of proof enunciated in *McDonnell Douglas Corp. v. Green*, 411 U. S. 792 (1973).

A Plaintiff who relies upon circumstantial evidence and has made a *prima facie* case of discrimination need only to point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence. *Sempier,* supra, at 728. (Emphasis supplied.)

3

> The fact finder's **disbelief** of the reasons put forward by the
> Defendant . . . may together with the elements of the *prima facie*
> case, suffice to show intentional discrimination.  Thus, rejection of
> the Defendant's proffered reasons will permit the trier of fact to
> infer the ultimate fact of intentional discrimination . . .

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) (Emphasis supplied.), quoted in *Sheridan v. E. I. DuPont Nemours and Co., Jacques Amblard*, 100 F.3d 1061, 1066 (1996).

Put simply, in order to survive summary judgment, a Plaintiff will prevail if the Plaintiff presents a *prima facie* case and discredits the employer's proffered reasons either circumstantially or directly **or** adduces evidence, whether circumstantial or direct, that the discrimination was more likely than not a motivating or determining cause of the adverse employment action.  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir. 1994); *Brewer v. Quaker State Oil Refining Corp*, 72 F.3d, 326, 330-31 (3rd Cir. 1995).

## IV.  ARGUMENT

A.  *Prima Facie Case*[1]

The order of proof under *McDonnell Douglas* requires first that the Plaintiff prove a *prima facie* case of discrimination.  The test for a *prima facie* case consists of four elements: 1. that the Plaintiff is in the protected class; 2. that the Plaintiff held the minimum qualifications necessary to perform the subject position; 3. that the Plaintiff suffered an adverse employment action (like termination); and 4. that the Plaintiff was treated less favorably than persons who were significantly younger and/or outside the protected age class. (*Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248 (1981)).

---

[1] *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

4

Here, it appears that the Defendant concedes that the Plaintiff has made out a *prima facie* case without actually saying so. (Defendant's Brief, p. 6). The reason that the Defendant makes this concession is because the elements of the Plaintiff's *prima facie* case directly support the claim of pretext.

*Age*

It is undisputed between the parties that the Plaintiff was born on April 22, 1938, and was 66 years of age on her last day of work for the Defendant.

*Termination*

It is undisputed that the Plaintiff was terminated from her employment effective in October 2004.

*Qualifications*

The Defendant has argued that the Plaintiff is not qualified to hold the position of community site consultant. (Defendant's Brief, p. 12).[2] The Defendant continues to claim that the position awarded to the much younger Rebecca Swick did not include teaching. (Defendant's Brief, p. 12). As shown in the fact recitation, however, the position description itself indicates that the successful candidate must have teaching, mentoring and supervising experience. The facts also show that Plaintiff had more than 35 years of experience in these areas and that Ms. Swick had none.

---

[2] The Plaintiff will offer no argument with respect to the worksite consultant position and its effect on the Plaintiff's claim of sex discrimination. In short, the Plaintiff will not pursue a claim of sex discrimination in this matter.

5

The facts also show that the job description indicated a preference for a master's level education. At the time that the much younger Ms. Swick was awarded this position, she did not have a master's degree, while the Plaintiff had a master's degree in education.

Ms. Swick testified as to her duties in the new position. With respect to each and every duty that was listed by Ms. Swick that she performs, the Plaintiff gave specific evidence of her far more extensive background in each and every area of endeavor which Ms. Swick now undertakes as part of her job. While teaching experience is a significant part of the Plaintiff's resume and teaching is an element of the job (according to the job description), the Plaintiff's additional, relevant, hands-on experience was extensive. In fact, the Plaintiff had been performing in professional positions requiring similar, but far more complex duties than those which Ms. Swick performed on a daily basis. In fact, the Plaintiff had more relevant programming and managerial experience than Ms. Swick had years of life.

With regard to the programs which Ms. Swick currently administers, the Plaintiff gave specific evidence that she had personally administered and taught all of these programs over a 20-year period. The exception was the osteoporosis program, which the Plaintiff had administered since its inception at Highmark. What is starkly obvious from the record is that at the time that Ms. Swick was given this job, she had no such experience.

*More Favorable Treatment of Younger People*

There is no question that younger people, including Ms. Swick, were treated far more favorably than the Plaintiff in this reorganization. Ms. Swick was 32 years old when the Plaintiff was fired at age 66. The other three individuals who were awarded the community site consultant position were all between 30 and 40 years younger than the Plaintiff.

In her position as manager of the Erie HealthPlace, the Plaintiff knew all of the managers of other HealthPlace locations. She knew from talking with these individuals and from working with them their approximate ages and their length of service with the Defendant. Plaintiff knew for a certainty that she was, by far, the oldest and most tenured HealthPlace manager working for the Defendant at the time that she was fired. The Defendant has offered no evidence to contradict this.

The above elements of the *prima facie* case are obviously met here. Under *McDonnell Douglas*, the Defendant bears the burden of articulating a legitimate, non-discriminatory reason for termination.

### *The Numerous Reasons Offered for the Termination*

The parties agree that Anna Silberman made the decision to fire the Plaintiff. In her deposition, when first questioned, Ms. Silberman said that she based her decision on three factors. They were the Plaintiff's performance reviews, the personnel files in general and input from the Plaintiff's immediate supervisor. It took the Defendant's lawyer to prompt Ms. Silberman to say that she also added her personal recollections and observations of the Plaintiff.[3]

Later, at the second session of Ms. Silberman's deposition, which was five weeks after the first session, Ms. Silberman sought to "supplement" her reasons for terminating the Plaintiff. This offer came at the beginning of her deposition, at which time Ms. Silberman testified that, in addition to the other reasons given for the termination, she considered the input of two other

---

[3] As indicated *infra*, Ms. Silberman had no supervisory responsibility or personal observations of the Plaintiff for at least four years prior to making the decision here.

individuals. These individuals, Ms. Rice and Dr. Pifalo, both testified on deposition.[4] In all, it appeared that at one time or another, Ms. Silberman offered six reasons for the Plaintiff's termination. Neither Ms. Silberman, nor anyone else gave any explanation as to why Ms. Silberman was required to supplement her testimony five weeks after the fact and one and one-half years after the termination, with other reasons which allegedly existed at the time of the termination. As will be seen, however, it is unclear from the testimony of Dr. Pifalo and Ms. Rice why Ms. Silberman was so anxious to supplement her testimony since they both clearly and directly contradicted Ms. Silberman.

*Pretext*

Each of the six reasons offered by Ms. Silberman for her decision are pretextual standing alone. When taken together, they give overwhelming evidence that Ms. Silberman basically lied to justify the termination of a 66-year-old woman in favor of a 32-year-old woman. Each reason has been individually shown to lack even the most minimal elements of credibility or believability.

*Reason One – The Plaintiff's Performance Reviews*

Ms. Silberman says that she relied on Plaintiff's performance reviews as part of her process in deciding to terminate the Plaintiff's employment. Ms. Silberman does not know which one of the performance evaluations that she used, but believes that she may have reviewed at least the last two years. She gives no explanation for why she did not review all of the

---

[4] When human resources consultant, Cynthia Mori, testified, she said that the only reason Ms. Silberman gave her for the Plaintiff's termination was her performance reviews. Other than the reviews, Ms. Mori could not identify any reason given by Ms. Silberman for the decision to terminate the Plaintiff. The Plaintiff recalls Ms. Mori telling her that the performance appraisals given by Ms. Silberman for the termination.

Plaintiff's evaluations, which are in the Plaintiff's Appendix for the Court's review. Significantly, Ms. Silberman thinks she may have reviewed the last two years of evaluations, which are the only two years in which the Plaintiff received any rating other than "exceeds expectations" prior to the decision to terminate her. In any case, in both of the reviews that Ms. Silberman reviewed, the Plaintiff was graded as "achieves expectations." In each of the other appraisals, the Plaintiff was rated as "exceeds expectations." Not surprisingly, Ms. Silberman had no idea whether she looked at any of the Plaintiff's "exceeds expectations" reviews prior to making her decision.

*Reason Two – The Plaintiff's Personnel File*

Ms. Silberman located one letter in the Plaintiff's personnel file from 1998 which she claims affected her decision to terminate the Plaintiff in 2004, six years after the fact, and four years after she had anything at all to do with the management or observation of the Plaintiff's performance. This letter is an alleged basis for Ms. Silberman having a poor opinion of the Plaintiff. What is clear from the records from 1998 is that Plaintiff's performance review, in which the Plaintiff was rated as "exceeds expectations," was signed off on by Ms. Silberman. There is no mention of this letter in the review, nor is there any indication in the performance review that the Plaintiff's personal interaction with students, faculty and employees of the Defendant is anything but fine. In fact, Plaintiff's immediate supervisor praised the Plaintiff, stating that she was a role model to both faculty and participants alike. It is hardly believable that this one lone letter in Plaintiff's personnel file, written six years prior to the termination announcement, could have so affected the Plaintiff's employment when it did not even rise to a single comment in the Plaintiff's performance evaluation at the time (at the time the letter was

written).  This evidence seems most incredible.[5]  There will be no good answer for the question of why Ms. Silberman took no steps to record or even investigate the outcome of this allegedly damaging letter or its complete absence from the Plaintiff's performance review.  Here, Ms. Silberman's credibility will suffer before the jury.

*Reason Three – The Opinion of Plaintiff's Immediate Supervisor*

Here Ms. Silberman's credibility passes beyond poor.  She claims to have consulted with the Plaintiff's immediate supervisor, Ms. Tina Palaggo-Toy.  What actually happened was that Ms. Silberman left Ms. Toy a voice mail asking who she would pick, the Plaintiff or Ms. Swick, for a position in the new organization.  She gave no further details beyond this bald question.  Ms. Toy left voice mail response saying that she would select the Plaintiff over Ms. Swick.

What is even more astonishing is that prior to terminating the Plaintiff, Ms. Silberman never approached Ms. Toy to discuss this decision or to find out why Ms. Toy would select the Plaintiff.  There was no follow up, no meeting and no discussion, prior to Ms. Swick making a decision to ignore Ms. Toy's recommendation and select Ms. Swick.

In deposition, Ms. Silberman rationalized that Ms. Toy must not have known the details of the position being offered.  When Ms. Toy testified, however, she said that she knew all about

---

[5] Because Ms. Silberman's credibility and believability in her role of decision maker are at issue here, it seems appropriate to remind the Court of how disingenuous she was while giving sworn testimony about the reasons for this termination.  When it became obvious to Ms. Silberman what counsel's point was in questioning the meaning of her signature on the 1998 review, Ms. Silberman became highly evasive.  She gave several different answers at several different times for what her signature meant.  The reasons she gave for her signature included: (1) she agreed with the review; (2) she approved a salary increase; (3) she did not strongly disagree; and (4) she wanted to send "***an incomplete message of appr***ov**al**."  This obvious waffling is transparent in its deceit.  Watching Ms. Silberman give all of these answers in a desperate attempt to deny the obvious and to disclaim her approval of this performance review was fascinating.  The Plaintiff has no doubt that the jury will see this deceit clearly when Ms. Silberman testifies.

what Ms. Swick does. She further stated that, if the asked the questioned today whether she would choose the Plaintiff over Ms. Swick, she would say yes again.

*Reason Four – Ms. Silberman's Personal Observations of the Plaintiff*

Surprisingly, at her deposition, Ms. Silberman did not have all of her reasons for terminating the Plaintiff carefully arranged in her mind. This is surprising because if Ms. Silberman had been telling the truth, she would have known the reasons why she fired the Plaintiff and retained someone more than 30 years her junior. Ms. Silberman had help from defense counsel at this point, because, after prompting, Ms. Silberman said that her personal observations of the Plaintiff also played a role in her decision. It will be recalled that Ms. Silberman had no observations of the Plaintiff for at least four years prior to making this decision, and played no role in her supervision during that time. Nevertheless, observations which were anywhere from five to ten years old apparently influenced this decision. We know this now because the Defendant's lawyer was kind enough to bring this to Ms. Silberman's attention during her deposition. Ms. Silberman gave testimony about two such observations which allegedly influenced her decision to terminate the Plaintiff.

*First Personal Observation – Possible Program Failure, Possibly Ten Years Old*

Ms. Silberman gave some testimony about program which she says the Plaintiff failed to implement based on a seminar which the two attended together. Although she claims that this program never materialized to its "potential" (with no further definition), she also admitted that:

* she played no role in supervising the program's implementation;

* she does not remember Tina Toy's position on the Plaintiff's implementation of this program, nor whether the Plaintiff was reprimanded for this "failure";

* she does not know if she suggested a reprimand for this. No writing evidences this failure;

* she does not remember what role the Plaintiff played in the failure of the program, nor why it failed, but still believes that this failure was the Plaintiff's fault[6];

* Plaintiff suffered no discipline or other adverse consequence for this alleged failure of an allegedly important program;

* she made no personal observations of the Plaintiff during the implementation of this program;

* she does not know why the program failed, and does not remember any steps she may have taken to find out why;

* she put nothing in writing regarding the reason for failure of program. She can not remember why she did not write anything down, even though this was an important program.

It seems as though a jury should decide whether or not they can believe Ms. Silberman when she says that this program, unidentified in time or place, could have played any substantial role in a rational person's decision making process. Nevertheless, the Defendant asks this Court to decide <u>for the jury</u> whether this claim is believable.

*Second Personal Observation – A Ten-Year-Old Expense Report*

At some point between four and ten years prior to being fired, Ms. Silberman says the Plaintiff may have submitted an improper expense report. This "personal observation" bears a striking resemblance to the first personal observation mentioned above. Even though this "failure" played a significant role in the Plaintiff's termination, Ms. Silberman could not:

---

[6] Ms. Silberman later contradicted herself and said that she did not know whether or not the failure of this program was the Plaintiff's fault. (*Cf.* Silberman Depo., pp. 36 and 44).

12

* say when the problem occurred;

* specify the expense policy supposedly violated;

* remember what type of expense was involved;

* tell why the expense was illegitimate, just that it was;

* say that Plaintiff deliberately falsified an expense report, and, rather, had conceded that this probably constituted an accident;

* tell whether the mistake was deliberate or accidental. Accordingly, she claims to have given the Plaintiff the benefit of the doubt.[7]

Instead of sounding like a legitimate reason for firing the Plaintiff, this observation, about a possibly 10-year-old expense report which may or may have not been deliberate and was probably an accident and may or may not have been corrected, seems like a thin reason to fire a long-tenured employee. Again, the jury should decide whether it believes this claim by Ms. Silberman that this vague, indeterminate expense report violation actually played some significant role in the firing of a long-time employee.

### *Reason Five – Dr. Pifalo Either Did or Did Not Advise Ms. Silberman to Fire the Plaintiff*

Ms. Silberman says, after a five week "think-it-over," that a comment by Dr. Pifalo also affected her decision to terminate Plaintiff. Ms. Silberman told a fib, saying that Dr. Pifalo insisted that the Plaintiff be fired. Dr. Pifalo insisted that he said no such thing. Dr. Pifalo further insisted that he played no role whatsoever in the decision to terminate the Plaintiff, and was not consulted about that decision. What is maddeningly curious is why Ms. Silberman would insist on this fib, knowing that Dr. Pifalo still worked for the Defendant. This is exactly

---

[7] Even though she would later use the possibly ten year old incident as part of the justification for firing the Plaintiff.

13

the type of incongruent testimony regarding pretextual reasons for the termination of the Plaintiff that the jury should be permitted to sort out.

***Reason Six – Ms. Rice Either Did or Did Not Recommend the Plaintiff's Termination***

Ms. Silberman took five extra weeks to formulate another fib. She tried to pull the wool over the Court's eyes by swearing under oath that Ms. Rice said words to the effect that the Plaintiff should be terminated. Ms. Rice testified under oath that she was never consulted in the decision to terminate the Plaintiff and that she gave no opinion about that termination.

The tricky fib on Ms. Silberman's part here was the taking of a remark by Ms. Rice from another conversation out of context. At some point Ms. Rice did tell Ms. Silberman that the Plaintiff was not wanted on a particular client call because Ms. Rice's manager did not want the Plaintiff. Ms. Rice does not remember why the Plaintiff was not wanted, but she made it very clear that this comment (i.e., "anyone but Joy") had nothing to do with the subject of terminating the Plaintiff. Hence, Ms. Silberman's fib in taking an otherwise innocuous remark out of context appears to be an effort to reinforce her decision. It is unclear why Ms. Silberman would continue to fib and to say that she had confirmed the comment *and its nature* with Ms. Rice prior to the deposition. Ms. Rice made it very clear that she made no such comment in the context suggested. This fib appears to be the final nail in the coffin of Ms. Silberman's credibility.

The six reasons offered by Ms. Silberman are, to be charitable, subject to serious question regarding their believability. Had Ms. Silberman been honest in her deposition and forthcoming about whatever the reason or reasons were for this termination, this issue might be viewed differently. However, when the Defendant takes Ms. Silberman before a jury she will have to answer for what appear to be lies on the record.

14

Our Circuit has made it clear that where the reasons given by the Defendant for the termination are not believable and not credible, then the jury may find that they are a pretext to mask age discrimination. (*See*, *e.g.*, *Chippolini v. Spencer Gifts*, *supra*).

Taking into consideration the significant elements of qualification by the Plaintiff for this lower level position, and all the other elements of the *prima facie* case, coupled with the wholly disbelievable reason or reasons offered by Ms. Silberman, the jury should be given the task of deciding whether these lies and half-truths told by the Defendant as the reasons for the termination of the Plaintiff are merely mask for illegal age discrimination. As promised, the Plaintiff has demonstrated for the Court why the motion of the Defendant is absurd.

## V.  CONCLUSION

For all the above reasons, and in light of this Circuit's teachings in *Chippolini* and *Sheridan*, *supra*, significant matters of material facts remain in clear dispute. Therefore, Plaintiff respectfully urges that summary judgment be denied and trial on the merits should be scheduled forthwith.

          Respectfully submitted,

          SCANLON & SANSONE

          s/Joel S. Sansone
          Joel S. Sansone, Esquire
          PA ID No. 41008
          2300 Lawyers Building
          Pittsburgh, Pennsylvania 15219
          412.281.9194

Dated: January 24, 2006